## IRREGULAR MARKING OF BALLOTS UNDER THE AUSTRALIAN SYSTEM.

Common Pleas Court of Hamilton County.

FRANK E. MICHEL v. HENRY J. NAILOR.*

Decided, December, 1915.

*Elections—Ballots Improperly Marked Should be Counted, When—Crosses Wrongly and Inconsistently Placed—Intention of Voter Controls When Ascertainable.*

The right of suffrage should not be denied to a voter because of his failure to follow the strict letter of the law in the marking of his ballot, and while laxity in the marking of ballots by those who know how should not be encouraged, yet in the case of irregular markings and erasures by a voter who evidently acted with an honest purpose, his ballot should be counted if his intention can be ascertained with reasonable certainty.

*John Thorndyke*, for plaintiff.
*Samuel B. Hammel* and *Joseph W. O'Hara*, contra.

WARNER, J.

This is a proceeding on the part of Frank E. Michel to contest the election of Henry J. Nailor to the office of mayor of the municipality of St. Bernard at an election held on the 2d day of November, 1915.

A count of the ballots cast at said election for said office was made by the deputy state supervisors of elections in the presence of the court and counsel for the parties, the result of which was 707 uncontested votes for said Michel, and 704 uncontested votes for said Nailor, and 4 contested ballots. One of said four contested ballots it is conceded by counsel must be thrown out because the voter put a cross-mark on the left of each and every name on both tickets.

Contested ballot, Exhibit 3, shows no marks whatever on

*Affirmed by the Court of Appeals without opinion, March 14, 1916.

the Citizens ticket.   The Democratic ticket has a cross in the circle, and an additional cross-mark at the left of all the names on the ticket, except Nailor and another.   Section 5070, General Code, paragraph 5, distinctly declares that when a ticket is so marked the cross before the names of the candidates ''shall be treated as surplusage and ignored, and the ballot be counted for *all* the candidates on the ticket.'' This provision determines the construction to be given a ballot so marked and this ballot must therefore be counted for the contestee, Nailor, although the absence of the very personal cross-mark before his name wculd seem to indicate an intention not to vote for him.

The two remaning contested ballots present questions of more difficulty.

The ballot, Exhibit 1, has a cross-mark in the circle of each of the two tickets.   No other cross-marks appear anywhere on the ballot, but the voter erased with lead pencil lines drawn through them, names on each ticket, so that both tickets taken together contain unerased the correct number of names for each office to be filled.   On this ballot the name of the contestant Michel was erased.

The ballot, Exhibit 4, has a cross-mark *after* the name of contestee Nailor but within the rectangular space containing his name, and the same marking appears after two other names on the Democratic ticket.   No other marks of any kind appear on this ballot.

The purpose and intent of the Australian ballot law is well stated in the title to the act, ''To insure the secrecy of the ballot, and prevent fraud and intimidation at the polls.''

Section 21 of that act as amended, now Section 5070, General Code, paragraph 7, declares ''or if, for any reason, it is impossible to determine the voter's choice for an office to be filled, his ballot shall not be counted for such office.''   Paragraph 9 of said section declares ''No ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice.''

Paragraph 7 suggests, and said paragraph 9 distinctly asserts a limitation, or proviso, upon the strict letter of the law as to

the marking of ballots, and the intent of these provisions seems to be that a given ballot shall be counted if it is possible to determine the voter's choice, with reasonable certainty, from the cross-marks and erasures placed thereon.

The reason for these provisions is very apparent. The rules for marking a ballot necessarily apply to all classes and conditions of voters, from the most intelligent down through every grade to the lowest in the scale of intelligence. The voter who takes a ballot and retires to a booth to mark the same may well be presumed to know for whom he wants to vote, but experience shows that in many instances he may not express his choice in strict accordance with established rules. This state of affairs was undoubtedly anticipated and to an extent provided for in the provisions of the law quoted above. It was doubtless felt by the law makers that the great and important right of suffrage guaranteed to the citizen by the Constitution should not be denied to one who has made his ballot reasonably certain in expressing his choice.

The courts of this state are not in entire agreement as to the construction of this statute.

In *Re Bennett,* 8 O. N. P., 395, one of the first cases arising under this law, the question was whether a ballot with a cross-mark in the circle of one ticket, and a cross-mark *after* a name on another ticket, should be counted for that name, and the question was decided in the negative. The case was heard by the probate judge of this county and a freeholder's jury of three members, and came up as the result of a contest over the election of a solicitor for the municipality of Bond Hill. The probate judge charged the jury that "the provisions of the Australian ballot law pertaining to the color of the pencil to be used in marking, the kind of a mark by which the voter indicates his choice, and the place where the mark is to be put upon the ballot are mandatory, and must be substantially complied with before the ballot becomes a legal one and can be counted." On error to the common pleas, and later to the circuit court, the judgment in the case was affirmed by both courts without report.

Grave doubts have arisen as to the correctness of this deci-

sion in certain particulars because of later decisions of the Circuit Court of Brown County, affirmed by the Supreme Court without report, and of the Circuit Court of Columbiana County. The Brown County case was *Bambach* v. *Markley*, 9 C.C.(N.S.), 560. The question in this case was as to whether certain ballots informally marked should be counted for the contestant, Bambach, and it was decided in the affirmative. Bambach was a candidate for common pleas judge and his name was the only one on a certain non-partisan ticket. The court held that "if a voter makes a mark above or below or on the side, or at the top of the column, occupied by the name of the non-partisan candidate, his intention to vote for such candidate is clearly indicated and the ballot should be counted." (Affirmed 76 O. S., 636, without report.)

The following extracts from the opinion at page 567 indicate the principle upon which the case was decided:

"It is a rule of construction laid down by all text-writers upon the subject of counting votes that the primary step is to determine if possible the intention of the voter, and where that can be done no vote should be thrown out. * * * The courts, therefore, have construed all those Australian ballot laws in a liberal manner. * * * In obedience to this rule of construction, if from an inspection, and from the evidence it is possible to determine the intention of the voter, you must do so."

In the Columbiana county case, *Figley* v. *Conser*, 5 C.C. (N.S.), 119, the court declared that the Australian ballot law properly and liberally construed "does not render invalid a ballot upon which the contestant's name was written with a blue pencil, nor a ballot upon which a black pencil line is drawn through the name of a candidate, and the name of an opposing candidate written near and partly over it, notwithstanding no cross-mark appears opposite the latter's name."

These two cases, and others that might be cited, show that the courts recognize the limitations of certain classes of voters and have, therefore, in obedience to the requirements of the paragraphs quoted, held that if from the cross-marks and erasures

placed upon the ballot the intention and choice of the voter can be determined with reasonable certainty his vote should be counted.

This, however, is not intended to encourage laxity in the marking of ballots by those who understand how, but seeks to give effect to what is manifestly intended by one who does not understand how. Voters are generally honest and do the best they can in marking a ballot. A liberal interpretation of the law is not intended to foster fraud, or negative the secrecy of the ballot.

Applying these principles to the two remaining ballots, how stands the case:

In ballot, Exhibit 1, the name of the contestant Michel was erased, thus clearly showing that the voter did not intend to vote for him, and the cross-mark in the circle of the ticket upon which his name appears could have no possible reference to him, and so far as he is concerned may properly be treated as a nullity.

The name of the contestee Nailor appearing upon the other ticket with a cross-mark in the circle of that ticket makes it very certain that the voter intended to cast his ballot for the contestee, and it must be so counted. The ballot, Exhibit 4, has a cross-mark after the name of the contestee Nailor, but within the rectangular space where his name is printed. There are no marks on the other ticket. The placing of the cross-mark after his name does not appear to have been done for any ulterior or improper purpose, but seems to be the act of an honest voter who did not understand just how to mark his ballot right. I think his intention is plain and that his choice for mayor was the contestee Nailor, and this vote must be counted for him.

Ordered accordingly.